UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN M. HANSON,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>  Defendant. | No. CV 07-1644-RC<br><br>OPINION AND ORDER |

Plaintiff Kathleen M. Hanson filed a complaint on December 13, 2007, seeking review of the Commissioner's decision denying her application for disability benefits. The Commissioner answered the complaint on April 30, 2008, and the parties filed a joint stipulation on May 22, 2008.

**BACKGROUND**

**I**

On July 1, 2002 (protective filing date), plaintiff applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, claiming an inability to work since May 21, 2001, due to joint inflammation, pain, and depression. Certified Administrative

Record ("A.R.") 75-78, 82.  The plaintiff's application was initially denied on November 22, 2002, and was denied again on April 21, 2003, following reconsideration.  A.R. 59-67.  The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Helen E. Hesse ("the ALJ") on March 1, 2004.  A.R. 31-55, 68.  On March 25, 2004, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 9-17, 334-42.  The plaintiff appealed this decision to the Appeals Council, which denied review on June 9, 2004.  A.R. 5-8, 261, 343-46.

The plaintiff then filed a civil complaint challenging the Commissioner's decision.  <u>Hanson v. Barnhart</u>, case no. CV 04-1027-RC ("Hanson I").[1]  On February 25, 2005, pursuant to the parties' stipulation, judgment was entered remanding this matter under sentence four, 42 U.S.C. § 405(g) for further proceedings.  A.R. 347-49.  Following remand, the ALJ held a new administrative hearing on March 7 and June 11, 2007.  A.R. 449-88.  On September 24, 2007, the ALJ issued a decision again finding plaintiff is not disabled.  A.R. 262-74.

**II**

The plaintiff, who was born on September 22, 1960, is currently 48 years old.  A.R. 76.  She is a high school graduate, who attended college for a short time, and who previously worked as a sales manager, salesperson, telemarketer, and baker.  A.R. 34, 83, 88, 95-102, 452-53.

---

[1] Pursuant to Fed. R. Evid. 201, this Court takes judicial notice of all documents in Hanson I.

2

Since May 8, 2000,[2] the plaintiff has received treatment from her primary care physician, Jay Ferns, D.O., who has diagnosed her with Raynaud's phenomenon,[3] a cervical spine strain, anxiety, atypical chest pain and fatigue, among other conditions.  A.R. 144-75, 247-48, 251-53, 405-32.  Subsequently, Dr. Ferns referred plaintiff to Brigid M. Freyne, M.D., a rheumatologist, who examined plaintiff on January 29, 2003, and diagnosed her with fibromyalgia[4]/chronic fatigue

---

[2]  Although plaintiff has significant physical and mental health complaints, this opinion focuses solely on her physical impairments.

[3]  Raynaud's phenomenon consists of "intermittent bilateral ischemia of the fingers, toes and sometimes ears and nose, with severe pallor and often paresthesias and pain, usually brought on by cold or emotional stimuli and relieved by heat; it is usually due to an underlying disease or anatomical abnormality."  Dorland's Illustrated Medical Dictionary, 1371 (29th ed. 2000).

[4]  Fibromyalgia is:

> a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.  Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease.  Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community.  The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms.  The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis.

Benecke v. Barnhart, 379 F.3d 587, 589-90 (9th Cir. 2004).  Fibromyalgia is a physical disease, Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 873 (9th Cir. 2004), which "is diagnosed based on widespread pain with tenderness in at least eleven of eighteen sites known as trigger points."  Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1 (8th Cir. 2003); Rollins v.

3

syndrome,[5] primary Raynaud's phenomenon, and depression.  A.R. 245-46, 353-74.  Dr. Freyne continued to treat plaintiff for Raynaud's phenomenon and fibromyalgia/chronic fatigue syndrome, and repeatedly noted plaintiff had anywhere from 12 to 18 of the fibromyalgia trigger points.[6]  A.R. 230-44, 353-74, 433-39.  On December 16, 2003, Dr. Freyne opined plaintiff meets the American Rheumatological criteria for fibromyalgia, and her symptoms include multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, irritable bowel syndrome, frequent and severe headaches, premenstrual syndrome, numbness and tingling, sicca symptoms, Raynaud's phenomenon, dysmenorrhea, breathlessness, anxiety, panic attacks and depression.  A.R. 256-60.  Dr. Freyne opined plaintiff:

---

Massanari, 261 F.3d 853, 855 (9th Cir. 2001).

   [5]  Chronic fatigue syndrome is "persistent debilitating fatigue of recent onset, with reduction of physical activity to less than half of usual, accompanied by some combination of muscle weakness, sore throat, mild fever, tender lymph nodes, headaches, and depression, with the symptoms not attributable to any other known causes."  Dorland's Illustrated Medical Dictionary at 1752.

   [6]  The American College of Rheumatology's 1990 diagnostic criteria identify the 18 trigger points as located at: (1-2) the occiput bilaterally at the suboccipital muscle insertions; (3-4) low cervical bilaterally at the anterior aspects of the intertransverse spaces at C5-C7; (5-6) trapezius bilaterally at the midpoint of the upper border; (7-8) supraspinatus bilaterally at origins, above the scapula spine near the medial border; (9-10) second rib bilaterally at the second costochondral junctions, just lateral to the junctions on the upper surfaces; (11-12) lateral epicondyle bilaterally, 2 centimeters distal to the epicondyles; (13-14) gluteal bilaterally in the upper outer quadrants of the buttocks in the anterior fold of muscle; (15-16) greater trochanter bilaterally, posterior to the trochanteric prominence; and (17-18) knee bilaterally, at the medial fat pad proximal to the joint line.  (http://www.rheumatology.org/publications/classification/fibromyalgia/fibro.asp (last visited February 9, 2009)).

can occasionally lift and/or carry up to 20 pounds and bend and twist at the waist and frequently lift and/or carry up to 10 pounds; can walk 2 blocks without rest or severe pain; must walk for 4 minutes every 30 minutes; can sit for 30 minutes at a time and about 4 hours in an 8-hour day; can stand for about 20 minutes at a time and stand/walk for about 2 hours in an 8-hour day; needs a job that permits shifting positions at will; can use her hands for grasping 60% of the workday; can use her fingers for fine manipulation 50% of the workday; and can use her arms to reach overhead 5-10% of the workday. A.R. 258-59. Dr. Freyne also opined: plaintiff experiences pain daily, which can be caused by changing weather, cold, fatigue, hormonal changes, movement/overuse, and stress; emotional factors contribute to the severity of her symptoms; plaintiff's pain is frequently sufficiently severe to interfere with her attention and concentration; she has a moderate limitation in her ability to deal with work stress; and she experiences drowsiness as a result of medication she takes. A.R. 257-58. Dr. Freyne indicated plaintiff's impairments are likely to produce good and bad days and she would miss work more than three times a month due to her condition. A.R. 255, 260.

On July 20, 2006, Dr. Freyne opined plaintiff: can occasionally lift and/or carry up to 10 pounds, twist, stoop, and crouch; can frequently lift and/or carry less than 10 pounds and climb stairs; can stand and/or walk for less than 2 hours in an 8-hour day; can sit for about 2 hours in an 8-hour day; can sit for 45 minutes and stand for 15 minutes without having to change position, and must be able to shift positions at will from sitting to standing/walking; must walk

5

for 5 minutes every hour; will need to lie down at unpredictable intervals every 4-6 hours; can never climb ladders; is limited in her ability to handle objects; and must avoid all exposure to extreme cold, avoid even moderate exposure to extreme heat, and avoid concentrated exposure to wetness, humidity, noise, fumes, odors, dusts, gases, poor ventilation, and hazards. A.R. 385-87. Dr. Freyne also opined plaintiff would miss work more than three times a month due to her condition. A.R. 387.

Medical expert Sami Nafoosi, M.D., testified at the administrative hearing, that plaintiff has Raynaud's disease, fibromyalgia and depression. A.R. 467-74. Dr. Nafoosi opined plaintiff: can occasionally lift up to 50 pounds and frequently lift up to 25 pounds; can sit for up to 8 hours in an 8-hour day; can stand and/or walk for 6 hours in an 8-hour day; and should not work in environments that expose her to extremes of temperature changes. A.R. 473.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. <u>Sam v. Astrue</u>, 550 F.3d 808, 809 (9th Cir. 2008) (per curiam); <u>Vasquez v. Astrue</u>, 547 F.3d 1101, 1104 (9th Cir. 2008).

The claimant is "disabled" for the purpose of receiving benefits

under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

1   Applying the five-step sequential evaluation process, the ALJ
2 found plaintiff has not engaged in substantial gainful activity
3 between her alleged onset date, May 21, 2001, and her date last
4 insured, June 30, 2007.[7]  (Step One).  The ALJ then found that through
5 her date last insured, plaintiff "had the following severe
6 impairments: [a] history of treatment for Raynaud's disease,
7 fibromyalgia and depressive disorder" (Step Two); however, she does
8 not have an impairment or combination of impairments that meets or
9 equals a Listing.  (Step Three).  The ALJ next determined plaintiff
10 can perform her past relevant work as a telemarketer; therefore, she
11 is not disabled.  (Step Four).

**IV**

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here, the ALJ found plaintiff has the RFC to perform a limited range of medium work,[8] as follows:

---

[7] When a Title II claimant's period of eligibility for disability benefits expires on a specific date, it is the claimant's burden to prove she was either permanently disabled or subject to a condition that became so severe as to disable her **prior** to that date.  Lingenfelter v. Astrue, 504 F.3d 1028, 1033-34 (9th Cir. 2007); Greger v. Barnhart, 464 F.3d 968, 970 (9th Cir. 2006).  Here, the ALJ found plaintiff's date last insured was June 30, 2007, and plaintiff does not challenge that finding.

[8] Under Social Security regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

>     [S]he can sit 8 hours in an 8[-]hour day, stand and walk 6
>     hours in an 8[-]hour day, changing positions with normal
>     breaks.  She can lift and carry 50 pounds occasionally, 25
>     pounds frequently.  She should avoid exposure to extreme
>     temperature changes.  She is limited to mild stress dealing
>     with public, supervisors and coworkers.

A.R. 268.  However, plaintiff contends the ALJ's RFC determination is not supported by substantial evidence because, among other reasons, the ALJ improperly rejected the opinion of her treating physician, Dr. Freyne.  The plaintiff is correct.

　　The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).  Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008), and "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).  Moreover, "the opinions of a specialist about medical issues related to his or her area of specialization are given more weight that the opinions of a nonspecialist."  Smolen, 80 F.3d at 1285; Benecke, 379 F.3d at 594

n.4.

Here, Dr. Freyne is a rheumatologist,[9] who has diagnosed plaintiff with, and treated plaintiff for, fibromyalgia. Dr. Freyne has opined plaintiff cannot perform medium work; rather, she can: occasionally lift and/or carry up to 10 pounds, twist, stoop, and crouch; can frequently lift and/or carry less than 10 pounds and climb stairs; can stand and/or walk for less than 2 hours in an 8-hour day; can sit for about 2 hours in an 8-hour day; can sit for 45 minutes and stand for 15 minutes without having to change position, and must be able to shift positions at will from sitting to standing/walking; must walk for 5 minutes every hour; will need to lie down at unpredictable intervals every 4-6 hours; can never climb ladders; is limited in her ability to handle objects; and must avoid all exposure to extreme cold, avoid even moderate exposure to extreme heat, and avoid concentrated exposure to wetness, humidity, noise, fumes, odors, dusts, gases, poor ventilation, and hazards. A.R. 385-87. Dr. Freyne has also opined plaintiff would miss work more than three times a month due to her condition. A.R. 387.

The ALJ rejected Dr. Freyne's opinions, in part, because "Dr. Freyne does not identify any tender points with any specificity" and does not "identify any specific findings which would support [her] limitations." A.R. 270-71. Here, Dr. Freyne, on August 1, 2006,

---

[9] "Rheumatology is the relevant specialty for fibromyalgia." Benecke, 379 F.3d at 594 n.4; Jordan, 370 F.3d at 873. "Specialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community." Benecke, 379 F.3d at 594 n.4.

noted plaintiff had 18 of 18 trigger points.  A.R. 437; see also A.R. 230-45, 353-74, 433-39 (treating notes repeatedly find plaintiff had multiple trigger points upon examination).  Clearly 18 of 18 trigger points constitute the American College of Rheumatology's 1990 diagnostic criteria for fibromyalgia.  See fn.6 above.  Thus, the ALJ's reasoning is nonsensical; there is no reason for Dr. Freyne to repeatedly list each positive trigger point in her clinical notes. Cf. Ryan, 528 F.3d at 1201 n.6.  Moreover, if the ALJ found Dr. Freyne's clinical notes lacked specificity, she had a duty to inquire further into the bases of Dr. Freyne's opinions.  See Smolen, 80 F.3d at 1288 ("If the ALJ [thinks] he need[s] to know the basis of [a physician's] opinions in order to evaluate them, he ha[s] a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians[,] submitting further questions to them[, . . . or] continu[ing] the hearing to augment the record.").  Yet, despite this Court remanding plaintiff's claim for "further develop[ment of] the record with respect to the claimant's alleged fibromyalgia impairment including the opinion of Brigid Freyne, M.D.[,]" A.R. 348, 352, Dr. Freyne was never asked to elaborate on her findings.  Furthermore, to the extent the ALJ rejected Dr. Freyne's opinions for lack of "specific findings" beyond the trigger points, "[t]he ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement."  Benecke, 379 F.3d at 594 (citation and internal quotation marks and brackets omitted); see also Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003) ("[A] growing number of courts . . . have recognized that fibromyalgia is a disabling impairment and that 'there are no objective tests which can conclusively confirm the disease.'" (citation omitted)).  Therefore,

11

these are not specific and legitimate reasons for rejecting Dr. Freyne's opinions.

The ALJ also rejected Dr. Freyne's opinions as "suspect at best" because "there was no mention of any tender points in evaluations prior to Dr. Freyne's, nor are they mentioned elsewhere in the record." A.R. 270-71. Although an ALJ may properly reject a treating physician's opinion that is inconsistent with the medical record, Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004), there is no inconsistency here because no other treating or examining physician considered trigger points or fibromyalgia. Specifically, Dr. Ferns, plaintiff's primary care physician, referred plaintiff to Dr. Freyne for treatment of possible fibromyalgia; he did not diagnose or treat fibromyalgia. A.R. 144-75, 245, 405-32. Similarly, neither Dr. Mehta nor Dr. Mashour diagnosed or treated plaintiff's fibromyalgia; rather, Dr. Mehta treated plaintiff's Raynaud's phenomenon, A.R. 176-89, and Dr. Mashour examined plaintiff, diagnosed her with severe Raynaud's phenomenon and noted some tenderness to palpation on examination of the neck.[10] A.R. 196-200. Therefore, the ALJ identified no inconsistency, and this is not a specific and legitimate reason for rejecting Dr. Freyne's opinions.

---

[10] The ALJ also refers to a Dr. Gerson, whose opinion is not in the administrative record; therefore, the Court cannot consider it. Nor will the Court remand the matter to complete the record since plaintiff initially applied for disability benefits almost seven years ago and the case has already been remanded once. See Benecke, 379 F.3d at 595 ("Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.'" (quoting Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1398 (9th Cir. 1988))).

1  Ryan, 528 F.3d at 1200-01; Widmark v. Barnhart, 454 F.3d 1063, 1067-68
2  (9th Cir. 2006).
3  //
4      Since it was "legal error for the ALJ to discount the opinions of
5  [Dr. Freyne] without providing specific and legitimate reasons for
6  doing so[,]" the ALJ's RFC assessment, and Step Four determination,
7  are not supported by substantial evidence. Lingenfelter, 504 F.3d at
8  1038 n.10; Aukland v. Massanari, 257 F.3d 1033, 1037 (9th Cir. 2001).

## V

"Where the [ALJ] fails to provide adequate reasons for rejecting the opinion of a treating . . . physician, [this Court] credit[s] that opinion 'as a matter of law.'" Lester, 81 F.3d at 834 (quoting Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989)); Widmark, 454 F.3d at 1069. Here, vocational expert Alan Boroskin testified that an individual with the limitations Dr. Freyne identified would not be able to perform any jobs in the national economy. A.R. 488. Therefore, properly crediting Dr. Freyne's opinions, plaintiff is disabled.[11]

## ORDER

IT IS ORDERED that plaintiff's request for relief be granted, and the Commissioner shall award Title II disability benefits to plaintiff under 42 U.S.C. § 423.

---

[11] Having reached this conclusion, it is unnecessary to reach the other issues plaintiff raises.

R&R-MDO\07-1644.mdo
2/11/09

13

DATE:  February 11, 2009          /S/ Rosalyn M. Chapman
                                  ROSALYN M. CHAPMAN
                                  UNITED STATES MAGISTRATE JUDGE